UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **FIREFIGHTERS' RETIREMENT SYSTEM** | **CIVIL ACTION** |
| **VERSUS** | |
| **REGIONS BANK, ET AL** | **08-429-C-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

Signed in chambers in Baton Rouge, Louisiana, September 10, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FIREFIGHTERS' RETIREMENT SYSTEM | CIVIL ACTION |
| VERSUS | |
| REGIONS BANK, ET AL | 08-429-C-M2 |

## MAGISTRATE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Remand or to Abstain (R. Doc. 15) filed by plaintiff, Firefighters' Retirement Systems ("FRS"). Defendants, Regions Bank ("Regions"), Morgan Asset Management, Inc. ("MAM"), and Christopher J. Burke ("Burke") (collectively "defendants"), have filed an opposition (R. Doc. 29) to FRS's motion, in response to which FRS has filed a reply memorandum. (R. Doc. 30.)

## FACTS & PROCEDURAL BACKGROUND

FRS is an entity established by the Louisiana Legislature to operate a statewide retirement system for firefighters and certain others employed by the fire department of a municipality, parish, or fire protection district of the State of Louisiana, other than New Orleans. *See*, La. R.S. 11:2251-2165.[1] On June 12, 2008, FRS filed this suit in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, alleging that defendants misled FRS into investing in the Regions Morgan Keegan High Income Fund ("the Fund") and improperly urged FRS to remain invested in the Fund after it began

---

[1] FRS is responsible for providing retirement and disability to thousands of present and former firefighters in the State of Louisiana. To provide the required benefits, FRS primarily receives revenues through contributions from employees and employers, dedicated state tax revenues, and its own investment earnings. *See*, ¶6 of the Petition for Damages, R. Doc. 1-2.

1

experiencing reductions in the Net Asset Value ("NAV").  FRS contends that the Fund was mismanaged because, among other things, it purportedly violated investment restrictions in the Statement of Additional Information ("SAI") applicable to the Fund.  As a result of such conduct, FRS has alleged, in its petition for damages, six (6) causes of action against the defendants.

In Count One, FRS alleges that the defendants are liable under Louisiana's Securities Law (or "Blue Sky law"), specifically La. R.S. 51:712A, 51:714A, and 51:714B, because they recommended and sold shares of the Fund "through use of a misleading sales presentation [and prospectus] and without consideration of the propriety of the sale in light of the unsuitable nature of the sale of shares of the Fund, due to the high degree of uncompensated risk associated with each sale."  FRS contends that, in connection with the offer and sale of the Fund's shares, the defendants made various misrepresentations in the sales materials furnished to it and in the Fund's registration statements or amendments thereto, such as the prospectuses, statements of additional information, and in annual and semi-annual reports and other documents filed with the SEC.  FRS alleges that the representations and disclosures made by defendants were false and misleading because they "painted a picture of the [ ] Fund as a fund whose net asset value was subject to only limited fluctuation," that the Funds' holdings were diversified, and that the Fund could be accurately compared to other high yield funds, based upon the average rate of its holdings.  Finally, FRS contends, in Count One, that defendants are liable under Louisiana's securities law because they actively solicited the sale of the Funds' shares to serve their own financial interests.  *See*, Petition for Damages, ¶¶80-91.  As a result of the conduct alleged in Count One, FRS contends that it is entitled to recover "the consideration

paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if it no longer owns such shares." *Id.*, ¶89.  FRS further alleges, as it does in every other count of its petition, that defendants' actions resulted in "significant damages" to it, "including without limitation, lost investment funds, lost investment profits and opportunities, substantial expenses to investigate defendants' mismanagement, and inconvenience, entitling plaintiff to a full and complete recovery under the Louisiana Securities Laws." *Id.*, ¶91.

In Count Two of the Petition, FRS alleges that, under contract, industry and professional standards, and applicable law, each of the defendants owed fiduciary duties to it to act in its best interest.  FRS contends that defendants are liable for various breaches of those fiduciary duties, as set forth in ¶103 of the petition, under La. R.S. 11:263, 264, 264.3, 264.4, 264.5, and 264.6, La. R.S. 42:717 and 718, and La. C.C. arts. 4, 1757, 3002, and 3003.  *Id.*, ¶¶92-108.  In Count Three, FRS contends that the defendants are liable for bad faith breach of contract under La. C.C. art. 1997 in that they failed to comply with the Investment Management Agreement because they did not perform investment services for the sole and exclusive benefit of FRS and failed to provide reasonable and prudent investment advice to FRS.  *Id.*, ¶¶109-116.  In Count Four, FRS alleges that defendants tortiously mismanaged its assets, as set forth in ¶119, and are liable for negligent misrepresentation under La. C.C. arts. 2315 and 2316.  ¶¶117-120.

Finally, in Counts Five and Six, FRS alleges that defendants are liable under the doctrine of respondeat superior pursuant to Louisiana Securities Law and La C.C. arts. 2317 and 2320 for failure to adequately supervise Burke and two other investment officers who served as advisors to FRS relative to the conduct at issue and for detrimental reliance

under La. C.C. art. 1967 and related authorities, in that FRS justifiably relied upon the misrepresentations the defendants made regarding the Fund since defendants held themselves out to be qualified in their profession and subject to the standards of Chartered Financial Analysts. *Id.*, ¶¶121-129.  In each of Counts Two through Six (as in Count One), FRS alleges that, as a result of defendants' violations of state law, it sustained damages, "including without limitation, lost investment funds, lost investment profits and opportunities, substantial expenses to investigate defendants' mismanagement, and inconvenience, entitling plaintiff to a full and complete recovery." *Id.*, ¶¶91, 107, 115, 116, 120, 122, and 128.

On July 10, 2008, the defendants removed FRS's suit to this Court on the ground that a federal question is presented by FRS's claims.  Defendants explain in their Notice of Removal that, although FRS purports to assert only state law claims, it actually seeks a remedy in Count One of its petition that is only available under federal law, and a federal question therefore exists.[2]  Defendants further contend that federal question jurisdiction exists in this case because resolution of FRS's claims in Counts Two through Four of its petition will require this Court to address "substantial question[s] of federal law."[3]  Finally,

---

[2] Specifically, defendants note that, in Count One of FRS's petition (¶ 80-91), FRS sets forth a claim purportedly arising under La. R.S. 51:712(A) and labeled "Liability under Louisiana Securities Laws."  FRS also alleges that it suffered "lost investment profits and opportunities;" however, defendants contend that such damages are not available on a claim brought pursuant to La. R.S. 51:712(A) or under any other Louisiana securities law.  According to defendants, such a remedy is only available under federal law, specifically Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated under the Securities Exchange Act of 1934.  Defendants therefore contend that, because FRS seeks damages in Count One that are available exclusively under federal law, FRS's Count One necessarily alleges a cause of action arising under federal law.

[3] According to defendants, in order for FRS to prove its claims for breach of fiduciary duty, breach of contract, bad faith, and negligent misrepresentation in Counts Two through Four of the petition, it must establish that the Fund was overvalued and illiquid, and issues related to valuation, pricing, and liquidity of the Fund are "highly regulated by federal law."

4

defendants assert that this Court has jurisdiction over FRS's remaining claims (Counts Five and Six) through supplemental jurisdiction pursuant to 28 U.S.C. §1367.

FRS has now filed the present motion to remand or to abstain. In the motion, FRS requests that this Court: (1) remand this action to state court as improvidently removed and for lack of any federal subject matter jurisdiction pursuant to 28 U.S.C. §1447(c); or (2) alternatively, abstain from hearing this action under the *Burford* abstention doctrine and remand to state court pursuant to equitable principles.

## LAW & ANALYSIS

**I.     Does federal question jurisdiction exist in this case?**

A civil action may only be removed to federal court if it is founded upon a claim arising under the Constitution or laws of the United States. 28 U.S.C. §1441(b); 28 U.S.C. §1331. A case will only "arise" under federal law when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983).[4] A court will not have jurisdiction if federal law or preemption is merely a defense to state claims, even if the defense of federal law or preemption is the only issue at stake. *Id.*, at 12.

In the present case, FRS has not expressly alleged a claim under any federal law in its petition. It has alleged that defendants misled it into investing in the Fund and improperly urged it to remain invested in the Fund in violation of Louisiana's securities law

---

[4] The "well-pleaded complaint" rule "makes the plaintiff the master of the claim," and he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

5

and various duties owed under state law.  Although defendants contend that, under the "well-pleaded complaint" rule, FRS has actually alleged a federal law claim because FRS asserted in Count One a claim for "lost investment profits and opportunities" (a remedy that is purportedly only available under federal securities law), the Court finds that such argument is a misapplication of that rule, as the "well-pleaded complaint" rule is based upon the express allegations as they exist on the face of the complaint.  Because FRS's claim for "lost investment profits and opportunities" in Count One explicitly relies upon Louisiana's securities law, whether or not that law actually allows for such recovery, federal question jurisdiction does not exist in this case based upon the "well-pleaded complaint" rule.  *See, Ekas v. Burris*, 2007 WL 4055630 (S.D. Fla. 2007)(where the complaint did not expressly allege any violations of federal securities law, and instead explicitly alleged state law claims for breach of fiduciary duty and unjust enrichment, the court held that there was no federal jurisdiction under the "well-pleaded complaint" rule).[5]

---

[5] *See also, Stinson v. Scoggins*, 2008 WL 631204, *4 (W.D.La. 3/4/08)(holding that federal question jurisdiction did not exist where the plaintiff's petition did not reference a specific federal law or constitutional provision.  Although vague references were made in the petition to deprivation of "civil rights and liberties" and "unlawful detention," such references were deemed insufficient to warrant the exercise of federal jurisdiction since such rights were also protected by state law.  The lack of specificity as to any particular federal right precludes reading the complaint to assert a federal claim for removal purposes.  Where the complaint is vague and requires some divination to determine what it alleges, the court finds that it is more reasonable to construe it as claiming violations of state law.  Additionally, "federal question jurisdiction is not present merely because a federal law claim that was not pleaded by the plaintiff may be available to him."  Thus, a defendant may not remove based upon a federal claim that the plaintiff may possess but chooses not to assert in the petition)*; Applied Nutrition Strategies, LLC v. Phytoceutical Formulations, LLC*, 2003 WL 21498911 (E.D.La. 2003)(recognizing that federal district courts do not have exclusive original jurisdiction over trademark claims and that the plaintiff could choose any one of three types of trademark actions to bring in its petition:  a state common law trademark infringement suit, a state law unfair competition suit, or a federal law trademark infringement suit.  Because the plaintiff did not "clearly state" he was seeking relief under the federal trademark infringement law (the Lanham Act) and instead chose to assert state law causes of action sounding in unfair trade practice and unfair competition, removal was improper); *In re Hot-Hed Inc.*, 477 F.3d 320 (5th Cir. 2007)("It is at least incongruous to hold, as did the district court, that [plaintiff]'s plea for attorneys' fees "as allowed by law" – an allegation that fails to identify any statutory basis for attorneys' fees, either state or federal – impliedly rests on [federal law], which is not cited, while holding that the plea does not impliedly rest on [state law] because [the plaintiff] failed to cite it").

6

Where there are no federal issues apparent from the face of the plaintiff's petition, a case has been properly brought in state court unless the plaintiffs have engaged in "artful pleading." The "artful pleading" doctrine is an exception to the "well-pleaded complaint" rule, which provides that a plaintiff may not avoid federal question jurisdiction by characterizing a federal claim as a state claim. That doctrine allows the court to look beyond the express language on the face of the complaint to determine whether the (apparently) state claims are actually federal claims. *Lippitt v. Raymond James Fin. Serv. Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Such doctrine is an exception to the "well-pleaded complaint" rule because, under the "artful pleading" doctrine, even if a "well-pleaded complaint" does not explicitly set forth a federal claim, federal question jurisdiction may nevertheless exist in two (2) circumstances: (1) when Congress completely preempts an area of state law; and (2) when the state claim contains a "substantial and disputed federal issue." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mgmt.*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005); *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

FRS is correct, and defendants do not dispute, that FRS's claims arising under Louisiana's securities law are not completely preempted by federal securities law.[6] Thus,

---

[6] The Securities Act of 1933 and Securities Exchange Act of 1934 have savings clauses expressly preserving state law causes of action. *See*, 15 U.S.C. §§ 77p, 78bb(a)(except for class actions covered by the Securities Litigation Uniform Standards Act ("SLUSA"), remedies provided by the Securities Exchange Act are "in addition to all other rights and remedies that may exist in law or equity"). *See also, Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 124 (2d Cir. 2003)(noting that the SLUSA, which preempts the field in securities cases involving more than 50 plaintiffs, "does not, however, preclude all state enforcement or private causes of action in securities fraud cases"); *Finance and Trading, Ltd. v. Rhodia*, 2004 WL 2754862 (S.D.N.Y. 2004)(Plaintiffs' state law fraud and negligent misrepresentation claims in a securities fraud case were not created by the Securities Exchange Act, and thus were not subject to exclusive federal jurisdiction, nor were plaintiffs' claims in any way preempted by federal securities laws); *New York v. Justin*, 237 F.Supp.2d 368 (W.D.N.Y. 2002)(State brought action in state court alleging that securities broker and others violated state law through their involvement in an investment scheme. The court held that the state was free to pursue its rights and remedies against the broker under state law and that federal securities law

the sole issue before the Court is whether FRS's state law claims contain a "substantial and disputed federal" issue. *Grable*, at 312 (Beyond complete preemption, federal question jurisdiction may still exist if the federal issues embedded in the state claim are so significant that they constitute a substantial federal issue); *Hernandez v. Alcatel USA Resources, Inc.*, 2006 WL 2559539 (E.D. Tex. 2006)(Incidental federal issues are not sufficient to confer federal question jurisdiction). As noted above, defendants contend that a federal issue exists in this case because FRS's claim for "lost investment profits and opportunities" is a remedy that is only available under federal law (specifically, SEC Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5)).[7] While it may be true that the only *securities* law through which FRS could obtain such compensatory damages, above and beyond their out-of-pocket expenses, is federal law (since such damages do not appear to be available under

---

did not completely preempt the state's claims); *Contreras v. Host America Corp.*, 453 F.Supp.2d 416 (D.Conn. 2006)(A group of 45 shareholders and 2 corporate entities (less than 50 plaintiffs) brought a fraud action against a corporation in state court. The court held that the action was not completely preempted by the SLUSA); *Patterman v. Travelers, Inc.*, 11 F.Supp.2d 1382 (S.D.Ga. 1997)(Investors brought action against life insurers and mutual fund company to recover for fraud, negligent misrepresentation, negligent supervision, unfair business practices, false and misleading advertising, and racketeering in connection with sale of mutual funds and term life insurance. The court held that the National Securities Market Improvement Act ("NSMIA") did not completely preempt state law and failed to create removal jurisdiction); *Houston v. Seward & Kissell, LLP*, 2008 WL 818745 (S.D.N.Y. 2008)(noting Congress' express intent to preserve the state's traditional authority in the realm of fraud and deceit in securities offerings, even those inherently national "covered" securities and that states retain the ability to protect investors through application of state anti-fraud laws under the express language of 15 U.S.C. §77r(c)(1). The court rejected defendant's argument that the NSMIA preempted the field of securities fraud and remanded to state court claims based upon Oregon's blue sky law).

[7] In so arguing, defendants rely upon the Fifth Circuit Court of Appeals' decision in *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001), in which it was held that, where a plaintiff pleads only state law causes of action without reference to federal law but seeks a remedy exclusively available under federal law, then federal question jurisdiction exists, and removal is proper.

Louisiana's securities law),[8] the Court nevertheless finds that FRS could obtain those damages under the various other *non-securities* state law theories of recovery cited in the petition. For example, relative to FRS's allegation that the defendants breached their fiduciary duties as consultants and investment managers, FRS cites to La. R.S. 11:269, which provides that any consultant or money manager found to be in violation of that statute "shall pay to the system, plan, or fund an amount of money equal to the value of the revenue or payments he failed to disclose together with any damages caused by the failure to disclose." La. R.S. 11:269. In its remand motion, FRS also refers to La. R.S. 9:2201, which relates to liability of a trustee for breach of fiduciary duty and provides that such

---

[8] Louisiana's securities law only provides for limited recovery of actual "out of pocket" expenses and does not allow for recovery of the compensatory damages that FRS seeks in this suit. La. R.S. 51:714(A) states that "any person who violates R.S. 51:712(A) shall be liable to the person buying such security, and such buyer may sue in any court to recover consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest from the date of payment to the date of repayment . . . " *See,* La. R.S. 51:714(A) and 51:712(A); *Terrebone Bank & Trust Co. V. Land & Offshore Co.,* 1989 WL 114153, *2 (E.D.La. 1989)(holding that Section 714 of Louisiana's Blue Sky Law expressly limits recovery for violations of Section 712 to actual "out of pocket" expenses).

By contrast, the damages provision of the federal Securities Exchange Act of 1934, Section 28(a) (which provides that "no person permitted to maintain a suit for damages under the provisions of this chapter shall recover . . . a total amount in excess of . . . actual damages"), does not necessarily limit a plaintiff's recovery to out-of-pocket expenses, and has been held, in certain limited circumstances, to permit recovery under other theories that compensate a plaintiff for economic loss, including a benefit-of-the-bargain measure (*i.e.*, the "value that was represented as coming to the [plaintiff]") and under a disgorgement or consequential damages theory. *Goldkrantz v. Griffin*, 1999 WL 191540 (S.D.N.Y. 1999), citing *Osofsky v. Zipf*, 645 F.2d 107, 111 (2d Cir. 1981); *DCD Programs, Ltd. v. Leighton*, 90 F.3d 1442 (9th Cir. 1996); *Panos v. Island Gem Enters. Ltd.*, 880 F.Supp. 169, 175 (S.D.N.Y. 1995). In *Panos v. Island Gem Enters. Ltd.*, the Southern District of New York explained that, because Congress left the term "actual damages" in Section 28 of the Securities Exchange Act undefined, courts interpreting that section have been "reluctant to read the statute as applying a straight jacket to their traditional remedial role." *Id*. While courts have largely agreed that the statute forecloses recovery of punitive damages (equating actual damages with compensatory damages), some courts have interpreted the statute as permitting all forms of loss-based relief, whether articulated under out-of-pocket, benefit-of-the-bargain, or other loss theories. *Panos*, at 175. Those courts have held that Section 28 circumscribes a district court's discretion to award actual damages only to the extent it prevents "speculative" recoveries. *Id.*, citing *Pelletier v. Stuart-James Co.*, 863 F.2d 1550, 1557 (11th Cir. 1989); *Barr v. McGraw-Hill, Inc.*, 710 F.Supp. 95, 98 (S.D.N.Y. 1989). Nevertheless, it has been noted, in commentary, that benefit-of-the-bargain damages "should be the exception rather than the rule" when determining damages under Rule 10b-5, as such damages are "in the essence of a contract remedy that is based on a breach of a promise rather than the traditional out-of-pocket tort remedy." 3 T. Hazen, *The Law of Securities Regulation* § 12.12[3](5th Ed. 2005). Absent appropriate circumstances, benefit-of-the bargain damages based upon a purchaser's expected profit are "not likely to be the appropriate measure under Rule 10b-5." *Id.*

9

trustee shall be chargeable with: (1) a loss or depreciation in value of the trust estate resulting from a breach of trust; or (2) a profit made by him through a breach of trust; or (3) a profit that would have accrued to the trust estate if there had been no breach of trust. La. R.S. 9:2201. Additionally, La. C.C. art. 1997 provides that an obligor who in bad faith breaches a contract is "liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. C.C. art. 1997.[9] The general code articles pertaining to negligence cited in the petition, La. C.C. arts. 2315 and 2316, provide that defendants are responsible for any damage occasioned by their negligence, imprudence or want of skill. La. C.C. arts. 2315 and 2316. Finally, pursuant to La. C.C. art. 1967, defendants may be obligated by promises or representations that they made that they knew or should have known would induce FRS to rely upon them to its detriment, and FRS was reasonable in so relying. Recovery permitted for detrimental reliance includes not only "expenses incurred" but also "the damages suffered as a result of the promisee's reliance on the promise." La. C.C. art. 1967.[10] Thus, because the compensatory damages that FRS seeks in each of the counts of its petition are not exclusively available to it under federal law, federal question jurisdiction does not exist in this case on that basis.[11]

---

[9] *See also, ScenicLand Const. Co., LLC v. St. Francis Medical Center*, 41,147 (La. App. 2 Cir. 7/26/06), 936 So.2d 247 (noting that lost profits are recoverable in an action for breach of contract where the amount can be proved with reasonable certainty and that a customary or foreseeable profit may be resorted to as a measure of damages where there is no direct evidence of the exact extent of lost profits).

[10] *See also, MCS-1 Limited Partnership v. Progressive Bank & Trust Co.*, 93-1404 (La. App. 1 Cir. 5/20/94), 637 So.2d 782 (Dismissal of plaintiff's claim for lost profits in case alleging detrimental reliance, fraud, and negligent misrepresentation because the plaintiffs failed to prove that any representations or promises made by the defendant bank's representatives caused their medical clinic to fail or lose profits).

[11] The Court finds that the Fifth Circuit's more recent pronouncement in *In re Hot Hed*, 477 F.3d 320 (5th Cir. 2007), is dispositive of this case, rather than its prior decision in *Medina*, upon which defendants rely. In *Hot Hed*, the Fifth Circuit clarified *Medina* and held that, even though the plaintiff requested attorney's fees in its petition (a remedy sometimes allowed under the federal Lanham Act in trademark infringement cases), federal question jurisdiction did not exist based solely upon that requested remedy. The court reasoned that remand to state court was appropriate because the attorney's fees requested by the plaintiff were available

The other basis upon which defendants rely in support of federal jurisdiction is an argument that, in order for FRS to prove its allegations in Counts Two through Four of its petition (*i.e.,* that defendants breached their fiduciary duties, breached the Investment Management Agreement, and tortiously mismanaged FRS's assets by recommending that FRS initially invest in and remain invested in a Fund with an "overvalued" portfolio and which had holdings invested in "illiquid securities"), FRS will necessarily have to rely upon federal law because issues related to valuation, pricing, and liquidity of securities are "highly regulated by federal law."[12]  However, the mere presence of federal issues in a state cause of action does not automatically confer federal question jurisdiction.  *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1987). To determine whether federal question jurisdiction exists on that basis, the court must examine the "nature of the federal interest at stake" to determine whether that interest is sufficiently substantial to justify removal.  *Id.*  The court must determine whether "the state

---

under theories of state law not alleged in the plaintiff's petition, such as the Texas Declaratory Judgments Act. Additionally, the court held that, even assuming that the plaintiff failed to properly allege a basis for attorney's fees under state law, such failure would not require the claim to be read as a request for relief available under federal law, specifically, The Lanham Act.  The Fifth Circuit noted that The Lanham Act only permits recovery of reasonable attorney's fees in "exceptional cases."  Thus, since the plaintiff in *Hot Hed* never clearly stated that it was seeking attorney's fees under The Lanham Act or that the case presented the sort of "exceptional" conduct required to warrant attorney's fees under The Lanham Act, and simply alleged generally that it was requesting attorney's fees "as allowed by law," the Fifth Circuit could not say that such request was only authorized by federal law.  Similarly, in the present case, because FRS did not clearly state that it is seeking lost profits and investment opportunities under federal securities law (and instead alleged that it is entitled to such damages under Louisiana securities law and other state law theories of recovery) and such damages are allowable under federal law only in limited circumstances in any event (*See*, Footnote 8), this Court cannot say that such damage request is only authorized by federal law.  *See also, Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002)(Any ambiguities in the allegations of the petition must be construed against removal).

[12] Specifically, in its opposition to the present motion, defendants contend that FRS, in order to prove its state law claims, must prove improper valuation of the Fund, illiquidity of the holdings of the Fund, and that the prospectus contained misleading information -- issues which are governed by the following federal provisions:  17 C.F.R. 270.2a-4 (regarding the definition of "current net asset value" for use in computing periodically the current price of a redeemable security); 15 U.S.C. §80a-2(41)(defining asset value); 17 C.F.R. 270.22c-1 (governing the pricing of redeemable securities for distribution, redemption, and repurchase); and 15 U.S.C. 77j (governing the requirements for a prospectus).

action simply provides the vehicle for 'the vindication of rights and . . . relationships created by federal law," in which case removal is justified. *Donovan v. Rothman*, 106 F.Supp.2d 513, 517; *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000)("[F]ederal jurisdiction may . . . lie if the ultimate disposition of the matter by the federal court 'necessarily depends on resolution of a substantial question of federal law'").

Several courts have faced scenarios similar to the one before this Court, where allegations of fraud, breach of fiduciary duty, and/or negligent misrepresentation in the sale of securities have been alleged as state law causes of action, and despite the fact that federal securities law was implicated and consulted in the context of those suits in order for the plaintiffs to prove their claims, the federal law issues were not sufficiently substantial to confer federal question jurisdiction. For example, in *Finance and Trading, Ltd. v. Rhodia*, 2004 WL 2754862 (S.D.N.Y. 2004), the plaintiffs brought suit against the defendants in state court, alleging that the defendants committed common law fraud and negligent misrepresentation by giving the plaintiffs false and misleading information about the defendant, Rhodia, and that plaintiffs relied upon that information and invested in Rhodia, causing them to suffer more than $60 million in combined losses when Rhodia's stock declined. The defendants removed to federal court, claiming that a substantial federal question was involved because the defendants' alleged misrepresentations involved the filing of a fraudulent prospectus with the SEC. *Id.*, *1. The court found that there was no substantial federal question necessarily presented in either of the plaintiffs' claims. *Id.*, at *6. It explained that an assessment of whether the defendants committed fraud and negligent misrepresentation that happened to occur during a sale of securities did not implicate any federal law and that such assessment could be made based upon the

elements of a claim for fraud or negligent misrepresentation under New York's state law. *Id.* The court further noted that, although certain of the defendants' alleged misrepresentations were contained in prospectuses filed with the SEC, the plaintiffs' claim did not depend on any rights or causes of action created by federal law and stood independently on state common law grounds. *Id.*, *7. The fact that the plaintiffs had the option of bringing their action under several federal securities statutes and that such statutes provide remedies did not mean that the plaintiffs were obligated to base their claims upon them. *Id.* The court found that "no federal interest [was] compromised by the availability of a parallel state-law action, as federal securities laws generally do not preempt similar state law causes of action." *Id.*

The *Rhodia* court specifically distinguished a case upon which the defendants herein rely in support of their argument that the federal issues underlying FRS's state law claims are sufficiently substantial to confer federal question jurisdiction. That case is *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001). In *D'Alessio*, the Second Circuit affirmed removal of a plaintiff's state law claim that defendants had conspired to violate federal securities laws, holding that there was a substantial federal issue because vindication of the plaintiff's claim would depend on the court's construction of the federal securities laws. *Id.*, at 102-03. The *Rhodia* court explained that the *D'Alessio* court's conclusion was "inescapable," because the claim alleged in *D'Alessio* involved an act that could be interpreted only in relation to federal securities laws. As the facts were alleged in the *D'Alessio* case, the plaintiff would have had no state law cause of action if no federal law had been violated, and his case therefore rested substantially upon federal law and

13

was justifiably removed. *Rhodia*, at *7.[13] The *Rhodia* court distinguished *D'Alessio* (and another case, *Sparta Surgical*, discussed herein in Footnote 14) because, although federal securities laws would relate to the subject matter of the claims of the plaintiffs before it, their claims did not rest upon a violation of federal laws and therefore were not "governed by federal law." *Id.*, *8.[14] The *Rhodia* court further noted that the Second Circuit Court of Appeals had held that "the borrowing of . . . federal law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction." *Id.*, quoting *West 14th Street Comm. Corp.*, 815 F.2d 188, 193 (citing *Merrell Dow*, 478 U.S. 804, 814, n. 12 (1987)). Finding that the plaintiffs' claims concerned solely the nature and consequences of certain oral and written misrepresentations made by the defendants to the plaintiffs and that "New York common law [was] fully capable of resolving the plaintiffs' claims," the *Rhodia* court held that the case posed no "substantial federal question" justifying the exercise of federal question jurisdiction. *Id.*, *8-*9.

Similarly, because the present case involves the nature and consequences of certain oral and written misrepresentations made by the defendants to FRS concerning investment in the Fund, which can largely be resolved by reference to Louisiana's securities law and

---

[13] The *Rhodia* court noted that the result in *D'Alessio* applied equally in the case of *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209 (9th Cir. 1998), where the plaintiffs' common law claims were based upon the NASD's alleged violation of de-listing rules created by the Exchange Act. Were it not for federal law, the plaintiffs' claims in *Sparta Surgical* would not have existed, and removal was therefore justified. *Rhodia*, *7, quoting *Sparta Surgical* ("The viability of any cause of action founded upon NASD's conduct in de-listing a stock or suspending trading depends on whether the association's rules were violated").

[14] The *Rhodia* court explained that the plaintiffs had alleged that defendants' oral and written misrepresentations induced them to invest in Rhodia stock (similar to the allegations in the present case), and no federal statute or rule created or exclusively governed that claim. While the defendants (as they do in this case) claimed that federal securities laws would necessarily be implicated in the plaintiffs' case because, in order to determine whether the prospectuses and oral statements were misleading, the reviewing court must look to the federal securities laws for the applicable standards, the court found that contention to be without merit because it could rely upon state common law standards for determining fraud and negligent misrepresentation. *Id.*

to the other state laws cited in FRS's petition, with limited consultation of federal securities law relating to issues of valuation and liquidity, the Court does not find that plaintiffs' claims raise a "substantial question of federal law" warranting the exercise of federal question jurisdiction. *See also, New York v. Justin*, 237 F.Supp.2d 368 (W.D.N.Y. 2002)(State brought an action in state court, alleging that securities broker and others violated state law through their involvement in an investment scheme. The court found the defendants' arguments based upon *D'Alessio* unavailing for several reasons: (1) the duty to supervise securities salespeople (an issue which is also present in the case at bar) was not solely a creature of federal law, in that the liability provided for under federal securities law did not preclude resort to other theories of liability, including under traditional agency principles; (2) although the plaintiff acknowledged in its motions and at oral argument that proof of its claim may involve reference to federal law and SEC/NASD rules in establishing the relevant standard of conduct (as FRS has done in this case), that fact was not sufficient to confer federal jurisdiction;[15] and (3) unlike *D'Alessio*, where the plaintiff's state law claims alleged a conspiracy to violate federal securities laws and a failure to perform a duty created under federal law, the plaintiffs' claims in *New York v. Justin* alleged violations of New York securities and anti-fraud laws and a failure to perform a duty created by New York statutory and common law).[16]

---

[15] As in the present case, the plaintiff in *New York v. Justin* did not seek to "borrow federal law" and instead merely sought to use it as a "guidepost" in assessing whether the conduct on the part of defendant was appropriate. While reference may be made to federal law and rules with respect to certain standards (*i.e.*, concerning liquidity of securities, valuation, and the requirements of a prospectus), that is not sufficient to establish that a "substantial, disputed question of federal law is a necessary element of one of [FRS's] well-pleaded state claims."

[16] *See also, Roskind v. Morgan Stanley Dean Witter*, 165 F.Supp.2d 1059, 1067 (N.D.Cal. 2001)(no federal jurisdiction existed because the plaintiff's state claims depended on the scope of defendant's fiduciary duty as defined by state law and not NASD rules); *Lippitt v. Raymond James Financial Services*, 340 F.3d 1033 (9th Cir. 2003)(where an investor brought an action in state court challenging the marketing by national

15

The other case cited by defendants in their opposition supporting their position that a "substantial question of federal law exists in this case," *Gobble v. Hellman*, 2002 WL 34430286 (N.D. Ohio 2002), is also distinguishable from this matter. In *Gobble*, the plaintiffs filed a verified derivative action in state court, alleging causes of action for breach of fiduciary duty, waste of corporate assets, and abuse of control. The defendants removed the action to federal court on the ground of federal question jurisdiction, alleging that the plaintiffs had "artfully pled" federal law claims as state law claims. In reviewing the complaint, the court found that it made several direct references to federal securities laws and to defendants' alleged violations of those laws.[17] Because the state law claims alleged on the face of the "well-pleaded complaint" depended upon whether the defendants violated their duties under the Federal Exchange Act and SEC rules and regulations, the court found that the resolution of those claims" require[d] the construction and adjudication of

---

brokerage firms of an instrument known as a "callable certificate of deposit" on the ground that the marketing violated California Unfair Competition Law. The court distinguished *D'Alessio* and *Sparta Surgical* and held that a state court need not inquire into the New York Stock Exchange's regulations, or even refer to federal law, in order to decide the case before it. The court explained that whether the defendants' sales and marketing practices associated with the callable CDs violated federal law was immaterial to the plaintiff's claim, the viability of which arose from a specific state statute. The claim also did not require the court to make an independent assessment about whether the defendants violated exchange rules or regulations).

*Compare, Myers v. Merrill Lynch*, 1999 WL 696082 (N.D.Cal. 1999)(plaintiff brought an action under §17200 based on the defendant's practice of arbitrary penalties against individual investors; removal was held proper because the "propriety of defendant's practice . . . turn[ed] exclusively on the interpretation of federal securities laws and regulations").

[17] Specifically, plaintiffs alleged that the defendants breached their fiduciary duty under state law by failing to abide by federal rules and regulations. The plaintiffs' abuse of control claim was also predicated upon the defendants' alleged failure to abide by the control requirement set forth in the SEC rules and regulations. Additionally, plaintiffs alleged that the defendants failed to maintain adequate internal accounting controls to ensure compliance with Generally Accepted Accounting Principles ("GAAP") and failed to summarize and report financial data in compliance with an internal accounting control structure that is required by SEC rules and by §13(b)(2) of the Federal Exchange Act. The plaintiffs further alleged that the defendants breached their fiduciary duties by "causing or allowing the company to violate federal securities laws by making materially false and misleading statements and issuing false financial statements." Finally, an additional breach of fiduciary duty was alleged based upon the defendants' alleged failure to manage the assets and business in a "manner consistent with the operations of a publicly held corporation," which implicated issues of federal law defining how a publicly held corporation must be managed.

substantial questions of federal law," and federal jurisdiction was therefore proper. The court noted that, although the plaintiff was the "master of his complaint," he did not craft his complaint in such a way that it relied solely on state law. Instead, he explicitly cited alleged violations of federal law as a basis for his breach of fiduciary duty and abuse of control claims, and because interpretation of the Exchange Act and the various rules and regulations of the SEC is a "matter of substantial federal concern," such claims were properly removed to federal court for disposition, regardless of how plaintiff labeled the claims in his complaint. *Id.*, *3, citing *D'Alessio*, at 104; *Grayler v. New York Stock Exchange*, 118 F.Supp. 448, 449-450 (S.D.N.Y. 2000).

By contrast, in the present case, FRS has not alleged any violations of federal securities law or SEC rules on the face of its petition. Furthermore, while some of the allegations in the petition concerning valuation, liquidity, and the requirements for a prospectus may call upon federal law for guidance as to the applicable standards, those allegations that "merely provide a factual basis" for FRS's state law claims and which could "independently support either a state law claim or a federal law claim" are not sufficient to create a substantial question of federal law or to confer jurisdiction to the federal courts.[18][19]

---

[18] *See, Gobble*, at *3, n. 1 (where the court recognizes that some of the allegations in the plaintiffs' complaint were "merely factual allegations that could support state law claims or federal law claims" and that such allegations did not factor into the decision to deny the plaintiffs' motion to remand in that case).

[19] For another case similarly distinguishing *Gobble*, *see, Ekas v. Burris*, 2007 WL 4055630 (S.D.Fla. 2007). In *Ekas*, the plaintiffs filed a verified derivative complaint by shareholders on behalf of a nominal defendant against several members of its board of directors and executive officers for breach of fiduciary duties and unjust enrichment. The plaintiffs argued that there was no federal question to support removal because their claims arose under state law. Plaintiffs further contended that a complaint alleging state law claims based in part on false statements in documents required by federal securities law cannot be removed. In opposition, the defendants claimed that, to adjudicate fully the allegations in the complaint, the court would need to resolve multiple questions of federal law. The defendants pointed to various allegations in the complaint that they claimed showed that the violations of law stemmed from the alleged failure of the defendants to have in place a federally-mandated control structure that ensured the accuracy of financial information and compliance with GAAP. Additionally, the defendants asserted that the plaintiffs had sought to avoid federal question jurisdiction through artful pleading since it was actually federal law, not state law, that

Accordingly, because federal question jurisdiction does not exist on either of the grounds asserted by the defendants in their notice of removal, FRS's motion to remand should be granted.[20]

---

provided the duties and obligations at issue.

The *Ekas* court agreed with the plaintiffs and found that the plaintiffs' "passing references" to federal law in the complaint were not essential to proving any of the elements of the state causes of action alleged therein. The court found that, although the duty to comply with federal laws was one of many duties that were allegedly breached by the defendants, the "gravamen" of the breach of fiduciary duty rested upon the defendants "knowingly approving the Company's violation of GAAP." The court explained that, "[c]learly, in proving that a breach of fiduciary duty occurred, [p]laintiffs may point to evidence that the officers and directors failed to act in good faith when they made false statements. But the fact that some of those false statements were made to the SEC and may have violated federal law [was] tangential to proving the breach of fiduciary duty." *Id.*, *4. The court distinguished *Gobble* and found that adjudication of federal law would not be necessary because the complaint contained "[a]llegations that simply provided a factual basis for a [state law or federal law] claim." Although the defendants in *Ekas* made much of the fact that the complaint tracked the language of Section 13 of the Exchange Act, the court found that mere reference to federal securities law was insufficient and that such allegations were included in the complaint to simply set forth the various duties of the directors and officers of the defendants. Thus, if those allegations were proven, they would provide evidence of the defendants' role in the company but would not require an examination of federal law. In other words, the court rejected the defendants' contention that it would "need to construe and interpret the Exchange Act and Sarbanes-Oxley [Act] and whether defendants violated provisions of those federal laws." Instead, the court found that it only needed to examine evidence relating to the defendants' maintenance of the accounting of the company and, while there might be similarities to federal accounting requirements, that inquiry would not require the court to delve into federal law. *Ekas*, at *5.

[20] In the recent case of *Singh v. Duane Morris LLP*, 2008 WL 2908912 (5th Cir. 2008), the Fifth Circuit discussed the four-part test to be applied in determining whether a state law claim presents a "substantial and disputed" federal issue, warranting the exercise of federal question jurisdiction. Such jurisdiction exists where: (1) resolving a federal issue is necessary to resolution of the state law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Id.*, at *2. Based upon the above discussion, it is apparent that factors one through three are not satisfied in this case since FRS has not alleged the violation of any federal laws, has not referenced any federal laws in its petition, and reference will only be made to federal law as a "guidepost" or standard in establishing certain "factual predicates" for its claims. Additionally, the Court finds that the fourth factor also weighs in favor of remand. Considering that Congress specifically provided, in the SLUSA (15 U.S.C. §77(d)(2)(A) and 78bb(f)(3)(B)), an exception for state pension plans, allowing them to bring claims concerning a covered security in state court even though claims by other persons and entities are expressly preempted, as well as the fact that this suit involves a public retirement plan covering thousands of firefighters in Louisiana and which is partially funded by Louisiana's taxpayers, the exercise of federal jurisdiction in this case would upset the balance of federal and state judicial responsibilities, in that the State of Louisiana and its citizens have a legitimate interest in having this suit tried in Louisiana's state courts. It was made clear, in the defendants' opposition to the present motion, that, if this Court assumes jurisdiction over this matter, the defendants will promptly file a motion to transfer this case to a federal court in Tennessee, where ten other similar suits are pending as class actions against the defendants. FRS has indicated that it does not have the resources to cover the "large 'transaction' costs" of federal court class action litigation and that such costs would "eat directly into the funds otherwise available to pay pensioners." Thus, litigation costs associated with federal class action litigation in this matter, which could remain pending for years, would result in a burden on the State's public treasury and a potential reduction of public pension payment funds. The Court therefore finds that the most appropriate means by which to promote comity in this case is by remanding to state court.

**RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Remand or to Abstain (R. Doc. 15) filed by plaintiff, Firefighters' Retirement Systems, should be **GRANTED** and that this matter should be **REMANDED** to the 19th Judicial District Court, Parish of East Baton Rouge, for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, September 10, 2008.

*[signature]*

**MAGISTRATE JUDGE CHRISTINE NOLAND**